1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10                                ----oo0oo----

11

12   JIURU HU; PANAYIOTIS
     FRANTZIS;
13                                          NO. CIV. S-06-2805 WBS EFB
              Plaintiffs,
14
         v.
15                                          ORDER RE: MOTION TO DISMISS
     MICHAEL CHERTOFF, in his
16   official capacity as Secretary
     of the Department of Homeland
17   Security; ROBERT MUELLER, in
     his official capacity as
18   Director of the Federal Bureau
     of Investigation; EMILIO T.
19   GONZALEZ, in his official
     capacity as Director of the
20   United States Citizenship &
     Immigration Services; and
21   CHRISTINA POULOS, in her
     official capacity as Acting
22   Director of the California
     Service Center of the United
23   States Citizenship & Immigration
     Services;
24
              Defendants.
25

26                                ----oo0oo----

27           In this mandamus action, plaintiffs Jiuru Hu and

28   Panayiotis Frantzis seek to compel defendants, senior officials

                                      1

in the United States government, to immediately adjudicate their Form I-485 applications to adjust their status to that of lawful permanent resident ("LPR").  The matter comes before the court on defendants' motion to dismiss for lack of subject matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

I.   <u>Factual and Procedural Background</u>

Jiuru Hu is a citizen of China.  (Compl. ¶ 1.)  She is the beneficiary of an approved employment based third party preference visa petition (Form I-140), classifying her as a professional pursuant to 8 U.S.C. § 1153(b)(1)(c).  (<u>Id.</u> ¶ 9.) Panayiotis Frantzis is Hu's husband.  (<u>Id.</u> ¶ 1.)

Defendants are senior officials either in the United States Citizenship and Immigration Services (USCIS) or have responsibilities relating to that agency.  Michael Chertoff, Secretary of the Department of Homeland Security (DHS), oversees USCIS and is charged by law with the obligation of adjudicating applications for permanent residence.  (<u>Id.</u> ¶ 4.)  Robert Mueller, Director of the Federal Bureau of Investigation (FBI), is responsible for investigating aliens applying for immigration benefits.  (<u>Id.</u> ¶ 5.)  Emilio T. Gonzalez, Director of USCIS, is charged with adjudicating applications for permanent residence. (<u>Id.</u> ¶ 3.)  Christina Poulos, Acting Director of the California Service Center of USCIS, is also charged with adjudicating applications for permanent residence.  (<u>Id.</u> ¶ 2.)

On August 5, 2004, plaintiffs filed applications for LPR status with USCIS pursuant to 8 U.S.C. § 1255(a).  (<u>Id.</u> ¶

2

10.)  USCIS took plaintiffs' fingerprints on September 10, 2004, and again on October 19, 2005, and March 9, 2007.  (<u>Id.</u> ¶ 16; Ex. E.)

        Plaintiffs have inquired into the status of their applications on numerous occasions.  (<u>Id.</u> ¶ 8.)  On each occasion, they were told that the FBI namecheck, a required part of the LPR application, remained pending.  (<u>Id.</u> Ex. E.)  On October 17, 2006, plaintiffs sent a demand letter to the United States Attorney for the Eastern District of California requesting expedited action and threatening a mandamus action.  (<u>Id.</u> Ex. A.)  On December 5, 2006, plaintiffs filed this action seeking to compel defendants adjudicate their LPR applications.

II.  <u>Discussion</u>

        A.  <u>Legal Standard</u>

            1.  <u>Motion to Dismiss for Lack of Subject Matter</u>
                <u>Jurisdiction</u>

        Federal courts are courts of limited jurisdiction only authorized to adjudicate those cases which the Constitution and the laws of Congress permit.  <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." <u>Stock W., Inc. v. Confederated Tribes of the Colville Reservation</u>, 873 F.2d 1221, 1225 (9th Cir. 1989) (citing <u>Cal. ex rel. Younger v. Andrus</u>, 608 F.2d 1247, 1249 (9th Cir. 1979)).

        When considering a motion to dismiss for lack of subject matter jurisdiction, the district court may properly review evidence outside the pleadings to resolve factual disputes

3

1  concerning the existence of jurisdiction. <u>Land v. Dollar</u>, 330

2  U.S. 731, 735 n.4 (1947) ("[W]hen a question of the District

3  Court's jurisdiction is raised, either by a party or by the court

4  on its own motion . . . the court may inquire, by affidavits or

5  otherwise, into the facts as they exist."); <u>see also</u> <u>Biotics</u>

6  <u>Research Corp. v. Heckler</u>, 710 F.2d 1375, 1379 (9th Cir. 1983)

7  (consideration of material outside of the pleadings does not

8  convert a Rule 12(b)(1) motion into a summary judgment motion).

9  However, when the district court does not hold an evidentiary

10 hearing, the factual allegations in the complaint should be

11 accepted as true. <u>McLachlan v. Bell</u>, 261 F.3d 908, 909 (9th Cir.

12 2001).

13                2.   <u>Motion to Dismiss for Failure to State a Claim</u>

14         On a motion to dismiss for failure to state a claim,

15 the court must accept the allegations in the complaint as true

16 and draw all reasonable inferences in favor of the pleader.

17 <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974); <u>Cruz v. Beto</u>, 405

18 U.S. 319 (1972).  The court may not dismiss for failure to state

19 a claim unless "it appears beyond doubt that plaintiff can prove

20 no set of facts in support of his claim which would entitle him

21 to relief." <u>Van Buskirk v. CNN, Inc.</u>, 284 F.3d 977, 980 (9th

22 Cir. 2002).  Dismissal is appropriate, however, where the pleader

23 fails to state a claim supportable by a cognizable legal theory.

24 <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

25 1988); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)

26 (complaint must "give the defendant fair notice of what the

27 plaintiff's claim is and the grounds upon which it rests").

28 ///

1        B.    <u>Subject Matter Jurisdiction</u>

2              Plaintiffs predicate federal question jurisdiction upon

3    28 U.S.C. § 1331, the Mandamus Act, 28 U.S.C. § 1361, and the

4    Administrative Procedures Act (APA), 5 U.S.C. §§ 555(b) and

5    706(1).  Defendants argue that the court lacks subject matter

6    jurisdiction to grant mandamus because the plaintiffs are not

7    owed a clear duty and defendants' actions are discretionary.

8    Defendants further argue that the APA, 5 U.S.C. § 551 <u>et</u> <u>seq</u>.,

9    specifically precludes judicial review of matters committed to

10   agency discretion.

11            1.    <u>Mandamus Jurisdiction</u>

12             The Mandamus Act provides that "[t]he district courts

13   shall have original jurisdiction in any action in the nature of

14   mandamus to compel an officer or employee of the United States or

15   any agency thereof to perform a duty owed to the plaintiff." 28

16   U.S.C. § 1361.  "Mandamus is an extraordinary remedy and is

17   available to compel a federal official to perform a duty only if:

18   (1) the individual's claim is clear and certain; (2) the

19   official's duty is nondiscretionary, ministerial, and so plainly

20   prescribed as to be free from doubt, and (3) no other adequate

21   remedy is available." <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1084 (9th

22   Cir. 2003) (quoting <u>Patel v. Reno</u>, 134 F.3d 929, 931 (9th Cir.

23   1998)); <u>see also</u> <u>Pittston Coal Group v. Sebben</u>, 488 U.S. 105, 121

24   (1988) ("The extraordinary remedy of mandamus under 28 U.S.C. §

25   1361 will issue only to compel the performance of a clear

26   nondiscretionary duty.") (further citations omitted).  Mandamus

27   cannot be used to review the discretionary acts of government

28   officials. <u>Nova Stylings, Inc. v. Ladd</u>, 695 F.2d 1179, 1180 (9th

5

1  Cir. 1983).

2         In 2005, Congress amended the Immigration and

3  Nationality Act, 28 U.S.C. § 1252(a)(2)(B), which provides:

4         Notwithstanding any other provision of law (statutory
          or nonstatutory), including . . . section[] 1361 of []
5         title [28] . . . and regardless of whether the
          judgment, decision, or action is made in removal
6         proceedings, no court shall have jurisdiction to review
          --
7
          (i) any judgment regarding the granting of relief under
8         section . . . 1255 [adjustment of immigration status] .
          . . or
9
          (ii) any other decision or action of the Attorney
10        General or the Secretary of Homeland Security the
          authority for which is specified . . . to be in the
11        discretion of the Attorney General or the Secretary of
          Homeland Security . . . .[1]
12

13  Courts have consistently recognized that the meaning of this

14  statute is free from ambiguity and "its terms are pellucidly

15  clear." Safadi v. Howard, 466 F. Supp. 2d 696, 698 (E.D. Va.

16  2006).  The statute "means that courts are precluded from

17  reviewing any discretionary decision or action of USCIS." Id.

18  (emphasis in the original); see also El-Khader v. Perryman, 264

19  F. Supp. 2d 645, 649 (N.D. Ill. 2003) ("The meaning of the

20  statute is clear and unambiguous--it precludes the courts from

21  reviewing any discretionary decision of the [USCIS]."), aff'd sub

22  nom. El-Khader v. Monica, 366 F.3d 562 (7th Cir. 2004).

23         Section 1255(a) specifically provides that "[t]he

24  status of an alien . . . may be adjusted by the [designated USCIS

25  _____

26        [1]    Title 8, Section 1255, as enacted, refers to the
     Attorney General as the deciding official. However, the authority
     to adjudicate adjustment of status applications has been
27   transferred to the Secretary of Homeland Security and his
     designate in USCIS.  See 6 U.S.C. § 271(b)(5); 6 U.S.C. § 557.
28

                               6

1   official], in his discretion and under such regulations as he may

2   prescribe, to that of an alien lawfully admitted for permanent

3   residence." 8 U.S.C. § 1255(a).  Pursuant to this statutory

4   authority, USCIS has promulgated regulations governing the

5   adjudication process.  See 8 C.F.R. pt. 25.  USCIS normally uses

6   the following three background checking mechanisms that must be

7   completed before an application may be adjudicated: (1)

8   Interagency Border Inspection System name check, (2) FBI

9   fingerprint check, and (3) FBI name checks.  (Exh. to Mot. to

10  Dismiss) Notably, none of the regulations provide a time

11  limitation within which USCIS must render a decision on the

12  application or even the amount of time within which the FBI must

13  complete its name check or any other background check component.

14      Plaintiffs acknowledge that defendants have broad

15  discretion in how to ultimately decide their applications, but

16  argue that defendants have a non-discretionary duty to render a

17  decision within a reasonable time.

18      District courts have split on whether the pace that

19  USCIS adjudicates LPR applications is discretionary.  Some courts

20  have held that the statutory framework precludes judicial review

21  of the pace at which USCIS adjudicates LPR applications.  See

22  e.g., Grinberg v. Swacina, ___ F. Supp. 2d ___ , 2007 U.S. Dist.

23  LEXIS 19684, at *1 (S.D. Fla. Mar. 20, 2007) ("Sections 242 and

24  245 of the Immigration and Nationality Act [8 U.S.C. §§ 1252 and

25  1255] . . . preclude judicial review of any discretionary

26  'decision or action' of the Attorney General in immigration

27  matters includ[ing] the pace at which immigration decisions are

28  made."); Safadi, 466 F. Supp. 2d at 698-700 (Section 1255(a)

7

1    vests USCIS with discretion over the entire process of adjustment

2    application adjudication, and § 1252(a)(2)(B)(ii) precludes

3    judicial review of any action, which includes the pace at which

4    that action proceeds); Zheng v. Reno, 166 F. Supp. 2d 875, 880-81

5    (S.D.N.Y. 2001) ("Matters within the [USCIS]'s discretion are not

6    reviewable under the mandamus statute.  Thus, courts in this

7    district have repeatedly held that mandamus relief is unavailable

8    for delays in the adjustment process.").

9         Other district courts have concluded that because USCIS

10   has a nondiscretionary duty to render a decision, courts must

11   have jurisdiction in a mandamus suit alleging that USCIS failed

12   to adjudicate an application within a reasonable period of time,

13   or else USCIS could indefinitely delay rendering a decision.

14   See, e.g., Razaq v. Poulos, 2007 U.S. Dist. LEXIS 770, at *4

15   (N.D. Cal. Jan. 8, 2007) ("Congress had to have intended the

16   executive branch to complete these adjudications within a

17   reasonable time--because imposing no time constraint at all on

18   the executive branch would be tantamount to giving the government

19   the power to decide whether it would decide . . . . A 'duty to

20   decide' becomes no duty at all if it is accompanied by unchecked

21   power to decide when to decide."); Paunescu v. I.N.S., 76 F.

22   Supp. 2d 896, 901 (N.D. Ill. 1999) ("Defendants nevertheless had

23   a non-discretionary duty to issue a decision on plaintiffs'

24   applications within a reasonable time."); Yu v. Brown, 36 F.

25   Supp. 2d 922, 932 (D.N.M. 1999) ("[A]djudication must occur

26   within a reasonable time.  A contrary position would permit the

27   [USCIS] to delay indefinitely.  Congress could not have intended

28   to authorize potentially interminable delays.").

8

1    At least one court has declined to strictly follow
2 either approach, finding that defendants successfully challenged
3 subject matter because the agency was making reasonable efforts
4 to complete the adjudication in that particular case. Li v.
5 Chertoff, 2007 U.S. Dist. LEXIS 29776, at *14-*15 (S.D. Cal.
6 April 2, 2007) ("The Court concludes that as long as USCIS is
7 making reasonable efforts to complete the adjudication, the pace
8 required to complete that process is committed to USCIS's
9 discretion.")
10    This court concludes that the pace at which USCIS
11 adjudicates plaintiffs' applications is discretionary.  This is
12 not a situation where USCIS refuses to take any action to process
13 a LPR application or the where delay equates to a refusal to
14 process a LPR application altogether either by intention or
15 accident.  Should USCIS refuse to take any steps whatsoever to
16 resolve a LPR application or employ procedures such that no
17 decision will issue, it might legitimately be said that the
18 agency's inaction was not the result of an exercise of discretion
19 at all.  The agency would then not be operating within its
20 statutory discretion but rather abdicating its statutory duty to
21 adjudicate applications, and under those circumstances this court
22 could have jurisdiction to review the agency's actions.  Cf.
23 Adams v. Richardson, 480 F.2d 1159 (D.C. Cir. 1973) (en banc)
24 (where agency has "consciously and expressly adopted a general
25 policy which is in effect an abdication of its statutory duty,"
26 court had authority to direct agency to take certain actions to
27 comply with statutory duties, but not to resolve the ultimate
28 agency determination).

1    That is not the case here.  Although the time that has
2  elapsed in processing the LPR applications in this case has been
3  substantial, USCIS has not refused to process or take any steps
4  toward adjudicating these applications.  Instead, plaintiffs'
5  applications are simply proceeding at a pace unsatisfactory to
6  them.  However, so long as it appears that the pace at which
7  plaintiffs' applications are being processed is the result of the
8  exercise of some agency discretion, the statutory framework
9  precludes judicial review of the reasonableness of that pace.

10    The court agrees with the Safadi court that Congress
11  "did not intend to preclude from judicial review all
12  discretionary actions involved in the processing of an adjustment
13  application except for the pace of such processing."  Safadi, 466
14  F. Supp. 2d at 699.  Plaintiffs' argument that judicial review is
15  appropriate to ensure processing within a reasonable time is
16  belied by the complete absence of any statutory time limits.  Had
17  Congress intended to allow judicial review of the pace of
18  processing LPR applications, there would have been an exception
19  carved out from the general statutory exclusion of judicial
20  review in this area.

21    The court is particularly reluctant to reach a contrary
22  interpretation in the area of immigration since control of this
23  area is largely entrusted to the political branches of
24  government.  Mathews v. Diaz, 426 U.S. 67, 81 (1976) ("Since
25  decisions in these matters may implicate our relations with
26  foreign powers, and since a wide variety of classifications must
27  be defined in the light of changing political and economic
28  circumstances, such decisions are frequently of a character more

10

appropriate to either the Legislature or the Executive than to the Judiciary."); see also Vasquez-Lopez v. Ashcroft, 343 F.3d 961, 970 (9th Cir. 2003) ("'[J]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials exercise especially sensitive political functions that implicate questions of foreign relations.'" (quoting I.N.S. v. Aguirre-Aguirre, 526 U.S. 415, 425 (1999))).  Moreover, delays in conducting necessary security checks--the reason for the delay in adjudicating plaintiffs' applications--are "'inevitable and becoming more frequent in light of heightened security concerns in the post-911 world.'"  Safadi, 466 F.2d at 700 (quoting Mustafa v. Pasquerell, 2006 U.S. Dist. LEXIS 8047, at *16-*17 (W.D. Tex. Jan. 10, 2006)).  Should delays become systemically problematic, the political branches retain the power to allocate sufficient additional resources to USCIS and the FBI to alleviate that problem.  Judicial inquiry into the reasons for a delay is particularly improper in contexts where, as here, national security may be implicated.

Finally, jurisdiction predicated on unreasonable delay is an uncertain standard to say the least.  The Li court held that a delay, one year longer than the delay here, was not unreasonable and not due to agency inaction.  Li, 2007 U.S. Dist. LEXIS 29776 at *14.  The Yu court held that the delay in processing an LPR application that was less than the delay here may be unreasonable, but was not reasonable as a matter of law. Yu, 36 F. Supp. 2d at 935 ("The reasonableness of such delays depends on the facts and circumstances of each individual case which are currently not before the Court.")  This court does not

1  suggest that it is unable to engage in a reasonableness analysis.
2  The court does suggest, however, that such an analysis would be
3  subject to all of the vagaries, uncertainties, and potential
4  inequities inherent in any analysis so fact specific.  In this
5  court's view, that kind of approach is inappropriate in a context
6  where it was not contemplated by Congress and there are no
7  articulable factors to guide the court.

8       Rather than further taxing the limited resources of the
9  USCIS and the courts with mandamus petitions every time an
10 applicant is dissatisfied with the pace at which his or her
11 application is being processed, the better standard is for the
12 courts only to review those cases in which it appears that the
13 USCIS's actions or inactions are not the result of an exercise of
14 discretion but rather the result of an abdication of its
15 responsibilities to process and adjudicate LPR applications.

16      For all of the reasons above, the court finds that the
17 pace at which plaintiffs' applications are being adjudicated are
18 actions committed to defendants' discretion.  Because Title 8,
19 Section 1252(a)(2)(B)(ii) specifically excludes these actions
20 from judicial review, the court does not have jurisdiction to
21 entertain plaintiffs' mandamus action.

22      2.   Jurisdiction Under the Administrative Procedures
23           Act

24      The APA provides that "[w]ith due regard for the
25 convenience and necessity of the parties or their representatives
26 and within a reasonable time, each agency shall proceed to
27 conclude a matter presented to it."  5 U.S.C. § 555(b).  When a
28 plaintiff is entitled to judicial review, the reviewing court has

12

1  the power to "compel agency action unlawfully withheld or
2  unreasonably delayed."  5 U.S.C. § 706(1).

3      However, "a claim under § 706(1) can proceed only where a
4  plaintiff asserts that an agency failed to take a discrete agency
5  action that it is required to take."  Norton v. S. Utah
6  Wilderness Alliance, 542 U.S. 55, 64 (2004) (emphasis in
7  original).  The APA specifically exempts from judicial review
8  actions "committed to agency discretion by law."  5 U.S.C. §
9  701(a).  As discussed above, there are no governing statutes or
10 regulations specifying a time limit for processing an LPR
11 application or completing a FBI name check.  The APA's general
12 command that agencies resolve matters within a reasonable time is
13 not sufficient to give the court jurisdiction where, as here, the
14 challenged action is within an agency's discretion.  See Safadi,
15 466 F. Supp. 2d at 700; 5 U.S.C. § 701(a).

16     Moreover, even if the APA otherwise conferred
17 jurisdiction, Section 1252(a)(2)(B) of Title 8, which
18 specifically precludes judicial review notwithstanding the
19 mandamus statute, or any other provision of law, governs this
20 case.  For the reasons discussed above, Section 1252(a)(2)(B)
21 precludes judicial review of the pace at which defendants
22 adjudicate plaintiffs' LPR applications.  Therefore, plaintiffs'
23 citation to the APA and Section 1331 does not restore subject
24 matter jurisdiction.  See Safadi, 466 F. Supp. 2d at 700-701; Li,
25 2007 U.S. Dist. LEXIS 29779 at *17-*18.  Accordingly, the court
26 will grant defendants' motion to dismiss for lack of subject
27
28

1   matter jurisdiction under the APA.[2]

2          IT IS THEREFORE ORDERED that defendants' motion to

3   dismiss for lack of subject matter jurisdiction be, and the same

4   hereby is, GRANTED, and this action is hereby DISMISSED.

5   DATED:  May 21, 2007

6

7   _____
    WILLIAM B. SHUBB

8   UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26         [2]     Because the court grants defendants' motion under Rule
    12(b)(1, it need not address their motion under  Rule 12(b)(6).
27  Further, plaintiffs' counter-motion for summary judgment, which
    failed to adhere to the requirements of Local Rule 56-260, cannot
28  be considered since the court lacks jurisdiction to hear it.

14